UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
RAMIN DILFANIAN,

                       Plaintiff,

            -against-

THE NEW YORK CITY DEPARTMENT OF
EDUCATION and MAUREEN A. GOLDFARB,

                     Defendants.
------------------------------------------------------------------ x

MEMORANDUM AND ORDER

12-CV-6012 (ENV) (RER)

VITALIANO, D.J.

      Plaintiff Ramin Dilfanian filed this action against defendants New York City Department of Education ("DOE") and Maureen Goldfarb, alleging wrongful termination of his employment at New Utrecht High School ("NUHS"), where Goldfarb had been principal, in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"). On March 31, 2016, the Court granted defendants' motion for summary judgment without reaching the question of whether Goldfarb may be held individually liable as an employer under USERRA. March 31, 2016 Mem. & Order at 15 n.5, Dkt. 38. On appeal, the Second Circuit vacated that decision and remanded the case for further proceedings, including a determination as to individual liability. July 5, 2017 Summ. Order at 8 n.3, Dkt. 43. On May 15, 2018, defendants moved for summary judgment as to Goldfarb's individual liability. *See* Defs.' Second Mot. For Partial Summ. J. Regarding Individual Liability, Dkt. 53. For the reasons set forth below, the motion is denied.

## Background

      A detailed recitation of the underlying facts is provided in the Memorandum and Order deciding defendants' first motion for summary judgment. March 31, 2016 Mem. & Order at 1-7.

Familiarity with that decision and the prior proceedings is presumed, and only those facts necessary to an understanding of matters raised on the instant motion will be recounted.[1]

The prologue to controversy unfolds in 2006, when plaintiff joined NUHS's Math department on a probationary basis as an assistant principal. Defs.' R. 56.1 Stmt. ¶ 3. His working relationship with Goldfarb began the following year, when she became principal of NUHS. Id. ¶ 4. The principal's "mission" guided the school, her name prominent on the NUHS letterhead. Dilfanian Tr. at 44, Shaffer Decl. Ex. B, Dkt. 56-2; July 16, 2010 Letter, Shaffer Decl. Ex. P, Dkt. 56-16. As principal and sole "Rating Officer" at NUHS, Goldfarb exercised hiring authority, supervised and evaluated assistant principals, ruled on requests for approved absences, and assigned employees to specific projects. Dilfanian Tr. at 49, 55, 58, 67; Goldfarb Tr. at 59-60, 68, 127, 146, 232, Shaffer Decl. Ex. C, Dkt. 56-3. For example, Goldfarb removed Dilfanian from a data management project he had pursued under the prior principal, using his own data analysis program, so that NUHS could instead use data software provided by the City. Dilfanian Tr. at 73; Goldfarb Tr. at 57. She also assigned Dilfanian the role of testing coordinator. Dilfanian Tr. at 134. She controlled where he worked physically, moving his office closer to the math teachers he supervised. Goldfarb Tr. at 116.

From 2008 to 2010, Goldfarb completed annual personnel reports in which she reviewed Dilfanian's performance during the concluded school year. As part of the review, she made a

---

[1] The facts upon which this decision rests are taken from defendants' Rule 56.1 Statement of Undisputed Material Facts ("Defs.' R. 56.1 Stmt."), Dkt. 54, and plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment on Individual Liability Under USERRA ("Pl.'s Opp'n Mem."), Dkt. 52. Plaintiff did not submit a Rule 56.1 Counter-Statement.

2

recommendation regarding his continued employment. The reports also included a recommendation from the High School Superintendent as to plaintiff's future status. In 2008 and 2009, Goldfarb rated plaintiff's performance "satisfactory" and recommended continuation of his probationary employment. 2007-08 Pedagogical Supervisory Personnel Report, Shaffer Decl. Ex. D, Dkt. 56-4; 2008-09 Pedagogical Supervisory Personnel Report, Shaffer Decl. Ex. E, Dkt. 56-5. At the end of the next school year, however, the tide turned.

Dilfanian contends that change came after he informed Goldfarb of his receipt of a deployment order to Afghanistan in October 2009. According to plaintiff, he sought to have the deployment order nullified because, based on Goldfarb's reaction to the news, he was afraid he was going to lose his job. Dilfanian Tr. at 65-66. His motion papers seek to bolster his claim by recalling how he told his military supervisor that "my boss is not very happy" about the deployment, and expressed concern to employees at his reserve center that Goldfarb was "really looking to terminate me if I don't get out of [deployment]." *Id*. at 68, 108. Poor job performance—not his deployment status—defendants retort, caused the tide to turn, and endangered his career at NUHS.

Regardless of Goldfarb's motivation, it is uncontested that over the course of 2009 and 2010, she placed multiple letters discussing Dilfanian's performance in his personnel file. In November 2009, roughly two months after meeting with plaintiff and his union representative about his failure to attend a previous meeting, Goldfarb memorialized their conversation and warned that the "incident may lead to further disciplinary action, including an unsatisfactory rating and charges that can lead to your termination." Nov. 5, 2009 Letter, Shaffer Decl. Ex. G, Dkt. 56-7. A second letter, dated June 11, 2010, criticized his management of several math teachers and his failure to adequately inspect booklets for an Advanced Placement exam, ending

3

with a similar admonition that his conduct "may lead to further disciplinary action including an unsatisfactory rating and your termination." June 11, 2010 Letter at 3, Shaffer Decl. Ex. I, Dkt. 56-9. In a third letter, dated June 21, 2010, Goldfarb memorialized another meeting with Dilfanian and his union representative, this time regarding his absence from a recent professional development session. Once again, she cautioned that his actions "may lead to further disciplinary action including an unsatisfactory rating and your termination." June 21, 2010 Letter at 2, Shaffer Decl. Ex. J, Dkt. 56-10. All three letters were addressed to plaintiff alone, without any indication that a higher-level administrator had been copied.

In Dilfanian's 2010 personnel report, Goldfarb issued an "unsatisfactory" rating, on grounds of insubordination and "inability to properly supervise instruction and support teachers", and recommended discontinuance of his probationary employment. 2009-10 Pedagogical Supervisory Personnel Report at 2-3, Shaffer Decl. Ex. A, Dkt. 56-1. High School Superintendent Linda Waite joined in the recommendation of discontinuance. *Id.* at 3. The 2010 personnel report did not render a final decision to end plaintiff's employment; Goldfarb "just [made] the recommendation to do that." Goldfarb Tr. at 230.

Waite informed Dilfanian that she would review the recommendation and consider whether he should be let go in light of the letters in his file, giving him the opportunity to submit a written response before Waite made her "final determination". June 22, 2010 Letter, Shaffer Decl. Ex. O, Dkt. 56-15. Dilfanian submitted his response, addressed not to Waite but to Goldfarb, refuting her conclusion that the incidents documented in the letters provided evidence of insubordination or failure to supervise. July 16, 2010 Letter at 11, Shaffer Decl. Ex. P. He asserted that he had been a "valuable member of the administration" at NUHS, "under both you and your predecessor." *Id.* at 12.

4

Waite affirmed Goldfarb's recommendation that Dilfanian be discontinued from service, and he appealed to the Chancellor's Committee. July 23, 2010 Letter, Shaffer Decl. Ex. L, Dkt. 56-12; Chancellor's Committee Report, Shaffer Decl. Ex. K, Dkt. 56-11. During the appeal proceedings, Dilfanian testified at the Committee that he "always shared his thinking with [Goldfarb] and never undermined her authority. He did nothing without getting her approval." Chancellor's Committee Report at 4. The Superintendent's Representative, appearing on Waite's behalf, stated that Waite "support[ed] [Goldfarb] in her judgment." *Id.* at 3.

On this fulsome record, the Committee found "compelling evidence that [plaintiff's] performance was not satisfactory and did not measure up to [Goldfarb's] expectations and her vision for the school", concluding that he was insubordinate and had "demean[ed]" Goldfarb's "leadership skills". *Id.* at 7. The Committee recommended that the "unsatisfactory" rating be sustained and "concurred with" the recommendation of discontinuance. *Id.* In February 2011, Aimee Horowitz, Superintendent for Brooklyn and Staten Island High Schools, notified Dilfanian that she had received the report from the Chancellor's Committee and "reaffirmed" the recommendation of discontinuance. Feb. 18, 2011 Letter, Shaffer Decl. Ex. Q, Dkt. 56-17.

## Standard of Review

A district court must grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact, but merely to "determine whether there *are* issues of fact to be tried." *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995) (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984)). The moving party bears the burden of demonstrating that there is no

5

genuine issue as to any material fact, *see Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005), and the motion court will resolve all ambiguities and draw all permissible factual inferences in favor of the party opposing the motion, *see Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004); *Gummo v. Vill. of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.").

If the moving party meets its initial burden of demonstrating the absence of a disputed issue of material fact, the burden shifts to the nonmoving party. *Celotex Corp.*, 477 U.S. at 330. The nonmoving party may not rely solely on "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Instead, the nonmoving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case . . . . [s]ince a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23. If the evidence favoring the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (internal citations omitted).

## Discussion

Defendants argue that, since Goldfarb was not plaintiff's employer for USERRA purposes because "she lacked the authority to terminate his probationary employment", the case against her should be dismissed. Memorandum of Law in support of Defendants' Motion for Summary Judgment ("Defs.' Mem.") at 3, Dkt. 55. Dilfanian insists Goldfarb was a statutory

employer, reading the term to include individuals who have some input over hiring and firing, even where such authority is not final. Pl.'s Opp'n Mem. at 3-4.

USERRA defines an "employer" as any person or entity "that pays salary or wages for work performed or that has control over employment opportunities," including a person "to whom the employer has delegated the performance of employment-related responsibilities." 38 U.S.C. § 4303(4)(A)(i). While the phrase "control over employment opportunities" requires a degree of authority beyond a mere advisory role, modifiers such as "ultimate" or "exclusive" are notably absent. *See* Black's Law Dictionary (10th ed. 2014) (defining "control" as "the power or authority to manage, direct, or oversee"). Indeed, final decision-making power is not required to give rise to individual liability. *See Angiuoni v. Town of Billerica*, 999 F. Supp. 2d 318, 322 (D. Mass. 2014) (denying dismissal of claim against individual defendant who placed employees on administrative leave and made non-final recommendation of termination). Multiple courts "have held that individuals who have *authority or input* over hiring and firing or promotion are 'employers' under USERRA," and the United States Department of Labor has "decline[d] to adopt the position that individual supervisors and managers should be excluded from the regulatory definition of 'employer'". *Croft v. Vill. of Newark*, 35 F. Supp. 3d 359, 368 (W.D.N.Y. 2014) (emphasis added) (collecting cases). However, an individual defendant may not be liable as an employer where, for example, there is "no basis" for plaintiff's belief that the defendant participated in the employment-related decision, *Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 531 (S.D.N.Y. 2017), or the defendant had "no individual power" over plaintiff, who did not report directly to him, *Satterfield v. Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 438 (E.D. Pa. 1998).

There is no dispute that Goldfarb was in Dilfanian's "supervisory chain of command",

prepared his performance evaluations, managed him on a daily basis, and took part in "the events that ultimately caused [his] termination". *Croft*, 35 F. Supp. 3d at 368 (discussing *Baldwin v. City of Greensboro*, No. 1:09-CV-742, 2010 WL 3211055, at *4 (M.D.N.C. Aug. 12, 2010) (denying motion to dismiss claims against defendants in individual capacities), *R&R adopted in relevant part*, 2010 WL 9904879, at *1-2 (M.D.N.C. Oct. 15, 2010)). Before recommending discontinuance, Goldfarb repeatedly warned plaintiff of the possibility that he could be terminated, while expressing her dissatisfaction with his performance. Her recommendation of discontinuance was not final, but it was "supported" by Waite and "reaffirmed" by Horowitz, who did have final authority. It is hard to imagine anyone who influenced the decision to terminate plaintiff more than Goldfarb.

Furthermore, one of the grounds for Dilfanian's termination was his alleged insubordination to Goldfarb specifically. The Chancellor's Committee does not define "insubordination," but its analysis is consistent with the general legal meaning as "willful disregard of an employer's instructions, especially behavior that gives the employer cause to terminate a worker's employment." Black's Law Dictionary (10th ed. 2014). The Committee found that Dilfanian's actions detracted from Goldfarb's "vision" for NUHS and "demeaned" her position in the school's primary leadership role. Moreover, plaintiff's perception of Goldfarb as "the boss", though not determinative, supports an inference that she was his "boss", that is, a statutory employer.

It is certainly more than plausible that everything school authorities say were the reasons that Dilfanian was discontinued from his probationary employment are true and that his military commitment and deployment are not motivating factors. But, drawing all permissible factual inferences in favor of the non-movant, a rational juror could find that Goldfarb was plaintiff's

employer and that his military service motivated her role in his firing. Accordingly, the motion for summary judgment as to defendant Goldfarb is denied.

## Conclusion

For the foregoing reasons, defendants' motion for summary judgment as to Maureen Goldfarb is denied.

This matter is respectfully referred to Magistrate Judge Ramon E. Reyes, Jr. for a conference to address any outstanding pretrial matters.

So Ordered.

Dated: Brooklyn, New York

August 15, 2018

/s/ Hon. Eric Vitaliano
ERIC N. VITALIANO
United States District Judge